## Roth and McCrone *versus* Humrich and Maglaughlin.

1. Maus sold land by verbal agreement to May, the deed to be made to such person as May should direct: May then gave notes for the purchase-money, and judgments were entered on them; one-half the purchase-money having been paid, judgment was recovered against May; the remainder of the purchase-money was subsequently paid. Maus, at the request of May, conveyed to Roth, and afterwards the land was levied on and sold on the judgment against May. *Held*, that May's equity was liable to the execution of his creditor and his title passed to the purchaser at sheriff's sale.

2. When Maus, at the request of May, executed the deed to Roth, May's inchoate title became complete so far as concerned Maus, who alone could set up the Statute of Frauds.

3. The deed to Roth perfected May's title, and it enured to the benefit of May's creditors.

4. Roth paid no part of the purchase-money and therefore could not contest May's title; a resulting trust arose to May when Roth took the deed, and the title passed to the sheriff's vendee under the judgment against May.

May 11th 1874.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Cumberland county :* Of May Term 1874, No. 23.

This was an action of ejectment, brought March 28th 1870, by C. P. Humrich and C. E. Maglaughlin against Alexander McCrone, for a lot of land in West Fairview, being 58 feet in front and 139 feet deep.    On the 22d of November on application of Ferdinand Roth, who claimed title to the property, he was joined as a party defendant.

On the 19th of October 1858, one Daniel G. May became the owner of this lot with other real estate, under proceedings in partition of the estate of Frederick May, deceased.

The case was tried November 21st 1872, before Junkin, P. J.

The plaintiffs gave in evidence a judgment entered June 5th 1868, on award of arbitrators for $2723.48 in favor of Elizabeth May against Daniel G. May; appeal from the award and judgment on verdict, March 25th 1869, for $2530.41 ; fi. fa. on the judgment issued July 19th 1869, and levy on the land in dispute, with other land, on the same day.    The premises in dispute were sold by the sheriff to the plaintiffs for $270, and the deed to them acknowledged November 15th 1869.

The plaintiffs having rested, the defendants gave in evidence a deed dated August 31st 1867, and recorded November 2d 1869, from Daniel G. May and wife to Levi D. Maus for the premises, the consideration being $3000 ; also, deed from Maus to defendant Roth, dated August 5th 1869, and recorded January 28th 1870, for the same premises, the consideration mentioned being $3000 ; also, written "notice to bidders," from Roth, posted at the court-

[Roth *v.* Humrich.]

house at the time of the sheriff's sale of the property, notifying bidders that the premises did not belong to May, but had been conveyed by him to Roth, as above stated.

The plaintiffs in rebuttal called Levi D. Maus, who testified: That he went into business with May at Fairview, and bought the property, May informing him at the time that if he was not satisfied with it, he, May, would take it back. Witness being desirous to remove from Fairview, May agreed to take the property back at $3000, and said that witness should not make a deed to him, but let it stand as it was, that he expected to give it to his son Joseph if he did well, and whenever May was ready witness should make a deed to Joseph or to any other person whom May should designate, and witness agreed to do so. "All this was by word of mouth, no writing." The purchase-money was summed up with their other business. May gave witness two judgment-notes dated Dec. 1st 1867, one at four months for $1568 and the other at fifteen months for $2000.; on these notes judgments were entered. Maus left the premises March 28th 1868 and moved to Littlestown, Adams county. On the 1st and 2d of April 1868, $1568 were paid; on the 24th of December 1868, $1500 were paid, and in the spring of 1869, the remainder was paid. May afterwards brought to witness the deed of August 5th 1869, and asked him to execute it to Roth and he did so; no money was paid at the time; witness never had any communication with Roth.

John Olwine testified that May told him he had purchased back the premises from Maus; that in April 1868, he put up this property at auction for rent.

John Sheaffer testified that he was the crier at the auction April 10th 1868 for renting the house; that it was struck off at $150 per annum; that May said possession would be given immediately.

There was other evidence of May's declarations that he had re-purchased the property from Maus; also evidence that he had rented it and put tenants into possession, amongst others one Tomy, who went in immediately after the auction, and McCrone, one of defendants. McCrone testified that he paid rent to May, Roth never demanded or received any rent from him; also, evidence that the premises were assessed in May's name and that he paid the taxes.

The court, in charging the jury, after recapitulating the evidence, said :—

"No fact in the case is disputed or involved in contradiction, and under this state of things and in this kind of a case, we must give you binding instructions.

"The title of the plaintiffs must be derived through the lien of the judgment in execution of which they purchased, which bound from the 5th of June 1868 on the award; or else from the 25th of March 1869, the date of the judgment on the verdict or else by virtue of the lien of the levy which was July 19th 1869; either

26 P. F. SMITH—9

would bind any estate which the defendant May had at the time in the premises in dispute. The question then is, what estate, if any, did this parol sale by Maus to May give the latter in the lot, either on the 5th of June 1868, or the 25th of March 1869, or the 19th of July 1869. On the 5th of June 1868, $1000 of the purchase-money had been paid and May had gone into possession by his tenant Tomy, * * * and beyond all peradventure, on the 19th of July 1869, when the levy was made, no part of the purchase-money was unpaid. Had this sale been in writing we would all agree that May had an equity which the judgment bound, and while it is conceded that the statute permits no greater estate than a lease at will in land to be created by parol, yet when a chancellor decrees specific performance of a parol sale of land, it must be because he finds about it that which takes the contract out of the operation of the statute, and if so taken out it becomes valid, recognised as a valid agreement, and if so, it must confer rights; and if it confers anything it cannot be less than an *equitable estate* in the land in the vendee, and this a judgment will bind. * * *

"It has never been questioned, since Bellington *v.* Welsh, 5 Binney 129, that where both purchase-money was paid and possession taken by the vendee in pursuance of the contract, that a decree of specific performance would be made. * * * Maus moved away from the property in the spring of 1868, to Littlestown, thirty miles distant, and May publicly took possession, in pursuance of his purchase, by leasing at public outcry to a tenant who entered and occupied, and paid rent and was succeeded by another tenant, McCrone, who is a defendant, and who paid rent to May. * * * In the present case, Maus, the vendor, comes into court, proves the contract and in fact has fully executed it by conveying the legal title to Ferdinand Roth, the defending landlord, so that we think that the lien of the judgment against May did bind his equitable estate in the premises, and these plaintiffs own it by virtue of their purchase at sheriff's sale.

"But before the plaintiffs can recover it must appear that Ferdinand Roth is not a bonâ fide purchaser without notice of the equitable estate of May on which the judgment became a lien. Roth holds the legal title beyond all question, as appears by the deed of the 5th of August 1869, made by Maus at the request of May. If Roth ever paid any purchase-money it was not to Maus; because the proof is uncontradicted that May himself paid the $3000 purchase-money to Maus; that he carried the deed to Maus and got the latter to execute it, thus conveying the legal title to Roth. * * * It is not shown that Roth ever paid a dollar to May; and it is a conclusion of law that where one man pays the money for land and directs the conveyance to be made to another and no more is said, the law raises a resulting trust in favor of him who pays the money; the law never presumes that a

[Roth v. Humrich.]

man pays his money for another but for himself only. * * * The application of this principle to the case in hand makes Roth a mere trustee for May, so that the aid of a chancellor was never needed to execute this parol contract, the parties consummated it themselves by this conveyance. * * *

"On the whole case then we direct you to find a verdict for the plaintiffs."

The verdict was for the plaintiffs.

The defendants took a writ of error and assigned for error, the instructions of the court to the jury.

*S. Hepburn, Jr.*, and *S. Hepburn*, for plaintiffs in error.—This ejectment is in the nature of a bill in equity to enforce specific performance of a verbal agreement for the sale of land: Dougan v. Blocher, 12 Harris 28.   Generally possession taken and maintained in pursuance of a parol contract admits of compensation, and too much is made of it when treated as sufficient ground for decreeing specific execution: Moore v. Small, 7 Harris 461.   Possession was not taken in pursuance of the contract; it is delivery of possession upon the contract to which equity looks, and not to the subsequent continuation of it: Richards v. Elwell, 12 Wright 361.   The possession must be exclusive in the vendee: Chadwick v. Felt, 11 Casey 305.   The deed from Maus to Roth conveyed the entire estate and was primâ facie evidence that Roth paid the consideration in good faith: Wilson v. Howser, 2 Jones 109; Okison v. Patterson, 1 W. & S. 395; Sprague v. Woods, 4 Id. 193.

*T. Cornman* and *L. Todd*, for defendants in error, were stopped by the court.

Judgment was entered in the Supreme Court, May 18th 1874.

PER CURIAM.—It is not material whether the parol resale by Maus to May was enforceable before the deed from Maus to Roth on the 5th of August 1869, or fell within the operation of the Statute of Frauds.   Maus did not dispute it.   He received the purchase-money from May and executed the deed to Roth at May's request and direction, and delivered it to May.   When he did so the inchoate estate of May arising from the purchase and payment of the price, became complete, so far as it concerned Maus, who alone could set up the Statute of Frauds.   May's equity was liable to the execution of his creditors, and by the sheriff's sale, made after the delivery of the deed by Maus, passed May's title to the purchaser at the sheriff's sale.   May clearly could not deny. the effect of the sale upon the execution against him, if the deed had been made to himself instead of Roth.   If the deed to Roth made his title perfect, it enured to the benefit of May's creditors. The only question now is, whether Roth can contest May's title.

[Roth *v.* Humrich.]

It is clear he cannot, for he was not a purchaser and paid no purchase-money. He had nothing to do with the deed or the land. It is the ordinary case of one man buying, paying the purchase-money, and taking the deed in the name of another. A resulting trust for May arose when he took the deed. Roth was a mere trustee of the title, and this title passed by the sheriff's sale afterwards.                                        Judgment affirmed.